UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

ANTWAIN RASHAWN PORTER                                          PLAINTIFF

v.                                          CIVIL ACTION NO. 3:13CV-923-H

LOUISVILLE JEFF. CNTY. METRO GOV'T et al.                      DEFENDANTS

## MEMORANDUM OPINION AND ORDER

Plaintiff, Antwain Rashan Porter, filed a *pro se*, *in forma pauperis* complaint under 42

U.S.C. § 1983, the Prison Rape Elimination Act (PREA), the Americans with Disabilities Act

(ADA), the Federal Tort Claims Act (FTCA), and Title VII (DN 1).  This matter is before the

Court for screening pursuant to 28 U.S.C. § 1915(e)(2) and *McGore v. Wrigglesworth*, 114 F.3d

601 (6th Cir. 1997), *overruled on other grounds by Jones v. Bock*, 549 U.S. 199 (2007).  For the

reasons set forth below, the action will be dismissed in part and allowed to proceed in part.

## I. SUMMARY OF CLAIMS

Plaintiff's complaint, which he filed on his own paper, is lengthy and, at times, confusing.[1]

He names as Defendants the Louisville Jefferson County Metro Government; the City of

Louisville; the Louisville Metro Police Department (LMPD); Sgt. Matthew Glass, LMPD; and the

Louisville Metro Corrections Department (LMDC).  He also sues the following LMDC

employees:  Director Mark E. Bolton; Deputy Director Kathy Bingham, Chief of Staff Dwayne

---

[1]Screening of this matter was delayed because Plaintiff initially indicated he was going to
be represented by an attorney, prompting an Order from this Court asking that attorney to notify
the Court whether he would be representing Plaintiff.  After that attorney indicated to the Court
that he would not, another attorney filed a notice of appearance.  The Court ordered that attorney
to prepare a complaint in this case that conformed with the Federal Rules of Civil Procedure.
That attorney did not do so, and, eventually, moved to withdraw as counsel.  The Court allowed
that attorney to withdraw and granted Plaintiff 30 days to notify the Court whether he had
obtained counsel.  That time was extended on grant of Plaintiff's motion.  Because Plaintiff has
not indicated that he was successful in finding another attorney, the Court will proceed to screen
the complaint as initially filed.

Clark; Major Cathy Butler; Captains Martin Baker, Armon Walker, and Christopher Chapman; Lt. Michael Hogan; Corrections Officers Lester J. Padilla-Archilla and Nicholas Gravette; Classification Coordinator Jamie Allen; Arthur C. Eggers; and Sgt. Gregory Joiner.  He also sues Corizon Health Services (CHS) and the following CHS employees:  Angeleta Hendrickson; Mental Health Director Lee Zellars; Dr. David Preston Easley; Beverly Haskins; Mental Health Professional Kibibi Woods; Maxwell Henderson; Nurse Mike Grubbs; Head Registered Nurse Jessica Muncy; Dr. Leon D. French; and Marilyn Brown-Anderson, DMD.  Finally, Plaintiff names as Defendants Seven Counties Services, Inc. (SCS), and the following SCS employees: Charlotte Van Meter; Kara Easley; Thomas Reiss; Aaron Bates; Andrea Grigsby; Dr. Manshadi Sharifo; and Anthony M. Zipple.  He sues all Defendants in their individual and official capacities, except for Defendant Bingham, who is sued only in her individual capacity.

Plaintiff states that he was incarcerated at LMDC from December 27, 2010, until September 11, 2012.  He states that he had some mental health issues when he entered custody. He alleges that on December 27, 2010, he was sexually assaulted by Defendant Padilla, an LMDC corrections officer.  He alleges that on June 15, 2012, he was placed on grievance restriction, which he states violated his due process rights.  He further alleges that he was "forced" to go the emergency room, several dentists, doctors, counselors, sex-abuse counselors, mental health professionals, and psychologists "due to suffering from very serious 'ongoing' complaints, medical, dental and mental health conditions, because of the 12-27-2010 sexual assault, medical negligence and because of malpractice(s), conspired discrimination and conspired retaliation from Defendant(s) from 12-27-2010 until 9-11-2012 and after."

It appears that during his incarceration and afterwards he received some mental health counseling at Seven Counties Services.  He states that in June 2011, Defendants SCS, Van Meter,

and Bates "deliberately and intentionally conspired to lie and provide faulty, incorrect, and 'false' information about Plaintiff" to a state-court judge.

He states that at his release from LMDC on September 11, 2012, he "still had 'several' open investigations, open grievances, grievance appeals and 'open claims' against the Defendant(s), Seven Counties staff members, LMDC employee[]s, the City of Louisville employee[]s and Corizon Health Services." According to Plaintiff, on November 9, 2012, his last internal grievance with LMDC was answered, officially exhausting his remedies.

Plaintiff states that on September 25, 2012, Defendants French and Brown-Anderson told Plaintiff that they would not pull any of his teeth because of grievances he filed.

Plaintiff further states that, after his release from LMDC in September through October 2012 Defendant Padilla stalked and sexually harassed him. Plaintiff states that on October 17, 2012, he called 911 to report ongoing harassment from Defendant Padilla. He stated that he filed for and received an EPO against Defendant Padilla, but that police-officer Defendant Glass refused to issue a warrant for the arrest of Defendant Padilla.

He next alleges that on January 7, 2013, SCS retaliated by conspiring with LMDC and Defendant Bingham to have "an illicit Family Court Warrant issued against the Plaintiff, for 'failure(s) to complete and finish' SCS, as court-ordered." This resulted in his arrest on January 7, 2013. He also states he was wrongfully rearrested on April 12, 2013, due to conspired retaliation by LMDC, Defendant Bingham, and SCS. He states that then while reincarcerated at LMDC he confirmed that he was about to file his civil lawsuit and shortly thereafter, Defendants and CHS conspired to retaliate against him by prescribing life-threatening medications to which he had an allergic reaction, and placed him in an "un-safe room and cell with absolutely no bunk(s) . . . and the toilet was broke and was 'out-of-use' the entire time (two days) the Plaintiff was incarcerated."

He also asserts that the LMDC cell was "scattered with feces, stool and the strong smell of 'old' feces all over room." He states that on April 13, 2013, a family court judge dismissed the "false" warrant and told Plaintiff he no longer had to attend SCS. He was released from LMDC custody on April 13, 2013. He also alleges that as retaliation CHS and Defendant Henderson conspired with LMDC to refuse to provide adequate medical and mental health treatment, stating: "Maxwell Henderson walked right by Plaintiff without-out providing any mental health treatment."

Plaintiff claims false imprisonment and negligent maintenance of a building under the Tort Claims Act. He further states that he is asserting claims under various federal constitutional provisions and for state-law negligent and intentional infliction of emotional distress.

Plaintiff alleges that he is a member of the NAACP. Plaintiff alleges that Defendants intentionally discriminated against him "because he was a member of a protected class and that Plaintiff was deliberately bullied, sexually assaulted, abuse[d] and harassed based on his disabilities and race." (Emphasis deleted.) He further alleges, "Defendants deliberately, intentionally and maliciously classified and placed Plaintiff in harm's way and in solitary confinement, without a 'proper' hearing." He alleges, "Defendants 'refused' to 'protect' Plaintiff's health, well-being, life and safety, and Defendants treated Plaintiff differently than similarly situated individuals." He asks for injunctive relief and compensatory and punitive damages.

## II. <u>ANALYSIS</u>

This Court must review the instant action. *See* 28 U.S.C. § 1915(e)(2); *McGore v. Wrigglesworth*, 114 F.3d at 604-05. Upon review, this Court must dismiss a case at any time if the Court determines that the action is "frivolous or malicious," fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28

4

U.S.C. § 1915(e)(2)(B).  A claim is legally frivolous when it lacks an arguable basis either in law

or in fact.  *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).  The Court may, therefore, dismiss a

claim as frivolous where it is based on an indisputably meritless legal theory or where the factual

contentions are clearly baseless.  *Id.* at 327.  When determining whether a plaintiff has stated a

claim upon which relief can be granted, the court must construe the complaint in a light most

favorable to the plaintiff and accept all of the factual allegations as true.  *Prater v. City of*

*Burnside, Ky.*, 289 F.3d 417, 424 (6th Cir. 2002).  A complaint, or portion thereof, should be

dismissed for failure to state a claim upon which relief may be granted "only if it appears beyond a

doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to

relief."  *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000).

      While a reviewing court must liberally construe *pro se* pleadings, *Boag v. MacDougall*,

454 U.S. 364, 365 (1982) (per curiam), to avoid dismissal, a complaint must include "enough facts

to state a claim to relief that is plausible on its face."  *Bell Atlantic Corp. v. Twombly*, 550 U.S.

544, 570 (2007).

## A.  Prison Rape Elimination Act

      Although not addressed in the Sixth Circuit, several district courts have found that the

Prison Rape Elimination Act (PREA), 42 U.S.C. § 15601 *et seq.*, "does not create a right of action

that is privately enforceable by an individual civil litigant."  *LeMasters v. Fabian*, Civil No. 09-

702 DSD/AJB, 2009 WL 1405176, at *2 (D. Minn. May 18, 2009); *Rindahl v. Weber*, No. CIV.

08-4041-RHB, 2008 WL 5448232, at *1 (D.S.D. Dec. 31, 2008); *Bell v. Cnty. of Los Angeles*, No.

CV 07-8187-GW(E), 2008 WL 4375768, at *6 (C.D. Cal. Aug. 25, 2008); *Pirtle v. Hickman*, No.

CV05-146-S-MHW, 2005 WL 3359731, at *1 (D. Idaho Dec. 9, 2005).

      The PREA is intended to address the problem of rape in prison, authorizes grant

money, and creates a commission to study the issue.  42 U.S.C. § 15601 *et seq.*  The statute does not grant prisoners any specific rights.  In the absence of "an 'unambiguous' intent to confer individual rights," such as a right to sue, courts will not imply such a right in a federal funding provision.

*Chinnici v. Edwards*, No. 1:07-cv-229, 2008 WL 3851294, at *3 (D. Vt. Aug. 12, 2008) (quoting *Gonzaga Univ. v. Doe*, 536 U.S. 273, 280 (2002)); *Jones v. Schofield*, No. 1:08-CV-7 (WLS), 2009 WL 902154, at *2 (M.D. Ga. Mar. 30, 2009) ("A reading of the Prison Rape Elimination Act makes clear that its goal is to lessen the occurrence of rapes in prisons across this Country.  Its focus concentrates on statistics, standards, developing information, and regulating federal funding in an effort to lessen prison rapes.").

Upon consideration, this Court also concludes that the PREA creates no private right of action.  Plaintiff's claims brought under that Act must, therefore, be dismissed.

**B. ADA**

In the portion of his complaint under the heading "Americans with Disabilities Act," Plaintiff states that LMDC and Defendants denied him access to programs and services including social services, religious services, substance abuse classes, academics, and recreation.  Elsewhere, under the heading "Count III: Violation of the Americans with Disabilities Act," Plaintiff alleges that Defendants failed to accommodate his mental disability.

To make out a claim under the ADA, Plaintiff must allege that:  (1) he is a qualified individual with a disability, (2) who was excluded from participation in or denied the benefits of the services, programs, or activities of a public entity, and (3) such exclusion, denial of benefits, or discrimination was because of a disability.[2]  42 U.S.C. § 12132.  A "public entity" under the Act does not include an individual prison official, and therefore, Plaintiff fails to state a claim against

---

[2]For the purposes of initial review, the Court assumes Plaintiff has a "disability" as defined in the ADA.

the individual defendants under the ADA. *See Lee v. Mich. Parole Bd.*, 104 F. App'x 490, 493 (6th Cir. 2004). The proper defendant under the ADA is the public entity or an official acting in his official capacity. *Carten v. Kent State Univ.*, 282 F.3d 391, 396-97 (6th Cir. 2002).

However, most of Plaintiff's claims against Defendants in their official capacities also fail because his allegations that he was denied various services, *i.e.*, social and academic services and recreation, based on his disability are purely conclusory. *See Bryant v. Madigan*, 84 F.3d 246, 249 (7th Cir. 1996); *Jones v. Martin*, No. 99-1255, 2000 WL 191807, at *1 (6th Cir. Feb. 7, 2000) (affirming dismissal of ADA claim where plaintiff failed to allege that defendants discriminated against him because of disability); *Sandison v. Mich. High Sch. Athletic Ass'n*, 64 F.3d 1026, 1030, 1036 (6th Cir. 1995)). However, attached to the complaint is a grievance filed by Plaintiff stating that he has been denied his right to go to church. The response to that grievance was that per LMDC policy, because Plaintiff was housed in the Mental Health Unit, Plaintiff could not "attend church services with the general population" but could request to speak to a religious service volunteer at his dorm and receive visits from the chaplain and/or other clergy. The Court finds that Plaintiff has stated a claim under the ADA against the Louisville Metro Government as to his participation in church services.

## C. FTCA

A claim under the FTCA may only be asserted against the United States. *See* 28 U.S.C. § 2674. Plaintiff sues no federal entities or officers. Because a claim under the FTCA may only be asserted against the United States itself, § 2674; *Allgeier v. United States*, 909 F.2d 869, 871 (6th Cir. 1990), this claim will be dismissed.

## D. Title VII

A claim under Title VII makes it unlawful to discriminate in respect to employment. 42

U.S.C. § 2000e *et seq.*; *Ricci v. DeStefano*, 557 U.S. 557, 580 (2009) (stating that "our decision must be consistent with the important purpose of Title VII-that the workplace be an environment free of discrimination"). Plaintiff's allegations do not involve discrimination in employment, and as such, will be dismissed for failure to state a claim.

**E. § 1983 claims**

*Claims for conspiracy*

"A civil conspiracy is an agreement between two or more persons to injure another by unlawful action." *Moore v. City of Paducah*, 890 F.2d 831, 834 (6th Cir. 1989); *Hooks v. Hooks*, 771 F.2d 935, 943-44 (6th Cir. 1985). In order to state a claim of civil conspiracy under § 1983, a plaintiff must show that there was a single plan, that the coconspirators shared in the objective of the conspiracy, violating the plaintiff's constitutional rights, and that an overt act was committed in furtherance of the conspiracy. *Moore*, 890 F.2d at 834; *Hooks*, 771 F.2d at 943-44. A plaintiff must plead a conspiracy with particularity, as vague and conclusory allegations unsupported by material facts are insufficient. *Twombly*, 550 U.S. at 566 (recognizing that allegations of conspiracy must be supported by allegations of fact that support a "plausible suggestion of conspiracy"); *Fieger v. Cox*, 524 F.3d 770, 776 (6th Cir. 2008).

The Court finds that Plaintiff's conspiracy claims do not survive initial review, with the exception of the conspiracy claims against Defendants Bingham and CHS as explained below.

*Claims against Louisville Metro employees in their official capacities, the City of Louisville, the LMDC, and the LMPD*

The claims against all Louisville Metro employees in their official capacities, the City of Louisville, the LMDC, and the LMPD are really claims against the Louisville Metro Government

(which Plaintiff has sued under the name Louisville Jefferson County Metro Government).[3]

Neither the LMDC nor the LMPD are a "person" subject to suit under § 1983 because municipal departments, such as jails, are not suable under § 1983. *Marbry v. Corr. Med. Servs.*, No. 99-6706, 2000 WL 1720959 (6th Cir. Nov. 6, 2000) (holding that a jail is not an entity subject to suit under § 1983); *see also Rhodes v. McDannel*, 945 F.2d 117, 120 (6th Cir. 1991) (holding that a police department may not be sued under § 1983). In this situation, Louisville Metro Government is the proper defendant. *Smallwood v. Jefferson Cnty. Gov't*, 743 F. Supp. 502, 503 (W.D. Ky. 1990). Further, Louisville Metro Government is a "person" for purposes of § 1983. *Monell v. Dep't of Soc. Servs. of the City of New York*, 436 U.S. 658 (1978).

Moreover, Plaintiff's official-capacity claims against the employees of the LMPD and the LMDC are actually against their employer, the Louisville Metro Government. *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) ("Official-capacity suits . . . generally represent [ ] another way of pleading an action against an entity of which an officer is an agent.") (internal quotation marks and citation omitted).

Therefore, the Clerk of Court will be directed to terminate the City of Louisville, the Louisville Metro Department of Corrections, and the Louisville Metro Police Department as Defendants in this action.

### Claims against LMPD Defendant Glass

Plaintiff's allegations against Defendant Glass are that Defendant Glass refused to issue a warrant for Defendant Padilla's arrest and that Defendant Glass used the "N-word" on April 11,

---

[3]In 2003, the City of Louisville government merged with the surrounding Jefferson County government and formed what is now referred to as Louisville/Jefferson County Metro government (Louisville Metro). See http://www.louisvilleky.gov. Therefore, the separate governmental entity of the City of Louisville no longer exists.

2012.

Plaintiff has no right to have another person charged with a crime.  Plaintiff as a private citizen may not enforce the federal criminal code.  *Cok v. Cosentino*, 876 F.2d 1, 2 (1st Cir. 1989) (per curiam); *Abner v. Gen'l Motors*, 103 F. App'x 563, 566 (6th Cir. 2004).

The Sixth Circuit has held that a pattern of racial harassment involving racial slurs may violate the Equal Protection Clause.  *Knop v. Johnson*, 977 F.2d 996, 1013-14 (6th Cir. 1992). However, the use of racial slurs, without harassment or some other conduct that deprives the victim of established rights, fails to state a claim for violation of the Equal Protection Clause. *Taylor v. City of Falmouth*, 187 F. App'x 596, 601 (6th Cir. 2006) (citing *Williams v. Bramer*, 180 F.3d 699, 706 (5th Cir. 1999)).  Thus, Plaintiff's claim that Defendant Glass used the "N-word" on one occasion does not state an equal protection claim.  Therefore, the claims against Defendant Glass will be dismissed.

### Claims against LMDC Defendants

#### Defendant Bolton

The complaint alleges that Defendant Bolton as LMDC Director "established policies either formally or by custom for, and was responsible for the employment, training, supervision and conduct of the offices and employees of the Department . . . ."  The complaint also mentions Defendant Bolton as part of a rambling story involving non-defendant Morris Deitz, which has nothing to do with Plaintiff.  The only specific allegations against Defendant Bolton is that a letter placing Plaintiff on grievance restriction had the letterhead of Mayor Fischer and Defendant Bolton.

The doctrine of *respondeat superior*, or the right to control employees, does not apply in § 1983 actions to impute liability onto supervisors.  *Monell*, 436 U.S. at 691; *Taylor v. Mich. Dep't*

10

*of Corr.*, 69 F.3d 76, 80-81 (6th Cir. 1995); *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984).

Rather, to establish supervisory liability in a § 1983 action, "[t]here must be a showing that the

supervisor encouraged the specific incident of misconduct or in some other way directly

participated in it.  At a minimum, a § 1983 plaintiff must show that a supervisory official at least

implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the

offending subordinate."  *Bellamy*, 729 F.2d at 421.  "Likewise, simple awareness of employees'

misconduct does not lead to supervisor liability."  *Leary v. Daeschner*, 349 F.3d 888, 903 (6th Cir.

2003) (citing *Lillard v. Shelby Cnty. Bd. of Educ.*, 76 F.3d 716, 728 (6th Cir. 1996)).  Supervisory

liability "must be based on active unconstitutional behavior and cannot be based upon 'a mere

failure to act.'"  *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999) (quoting *Salehpour v. Univ.

of Tenn.*, 159 F.3d 199, 206 (6th Cir. 1998)).  Thus, simply pointing to the fact that Defendant

Bolton is in charge of the LMDC does not state a § 1983 claim.

Regarding Plaintiff's allegation that the letter placing him on grievance restriction was on

Defendant Bolton's letterhead, no constitutional claim is stated.  An inmate grievance procedure

within the prison system is not constitutionally required.  *Argue v. Hofmeyer*, 80 F. App'x 427,

430 (6th Cir. 2003).  If the prison provides a grievance process, violations of its procedures do not

rise to the level of a federal constitutional right.  *LaFlame v. Montgomery Cnty. Sheriff's Dep't*, 3

F. App'x 346, 347 (6th Cir. 2001).  Thus, Plaintiff's allegations relating to being placed on

grievance restriction fail to state a claim.

*Defendants Butler and Baker*

Plaintiff's only allegation against Defendant Butler is that he told her about the

December 27, 2010, sexual assault against him but that Defendant Butler said that she would not

report the incident to the Cabinet for Health and Family Services because she was about to retire

and did not care.  Plaintiff alleges that Defendant Baker also failed to report the sexual assault against Plaintiff.

The Kentucky Cabinet for Health and Family Services is a state agency.  According to Plaintiff, Kentucky has "mandatory 'abuse' reporting laws [which] are codified in KRS 620 (Adults with Disabilities)."  The mere failure to follow a state law does not give rise to a constitutional claim.  *See Black v. Parke*, 4 F.3d 442, 447 (6th Cir. 1993) ("A state statute cannot create a federal constitutional right." (internal quotation marks deleted)).  Plaintiff's allegations against these Defendants fail to state a claim under § 1983.

*Defendant Chapman*

Plaintiff alleges that on September 17, 2012, Defendant Chapman "maliciously answered . . . one of Plaintiff's last grievances" by lying and refusing to resolve the issue.

A plaintiff cannot maintain a claim against a prison official based solely on his or her denial of the plaintiff's grievance.  "The mere denial of a prisoner's grievance states no claim of constitutional dimension."  *Alder v. Corr. Med. Servs.*, 73 F. App'x 839, 841 (6th Cir. 2003); *Grinter v. Knight*, 532 F.3d 567, 576 (6th Cir. 2008) ("The 'denial of administrative grievances or the failure to act' by prison officials does not subject supervisors to liability under § 1983.") (quoting *Shehee v. Luttrell*, 199 F.3d at 300).  Plaintiff's claim is against the subjects of his grievances, not those who merely decided whether to grant or deny the grievances.  *See Lee v. Mich. Parole Bd.*, 104 F. App'x at 493 ("Section 1983 liability may not be imposed simply because a defendant denied an administrative grievance or failed to act based upon information contained in a grievance.").  Thus, the allegations relating to Defendant Chapman do not support a § 1983 claim.

*Defendant Hogan*

Plaintiff alleges that he made several complaints to Defendant Hogan, telling him: "'Hogan you are only retaliating because I reported the Lester Padilla sexual assault.'" Plaintiff continues, "Due to retaliation, Lt. M. Hogan never did make a denial Plaintiff's 'ongoing' Claim(s) complaint(s). . . reference to Padilla and Hogan did not clean up the stool in Plaintiff's room." (Emphasis deleted.)

The elements of a retaliation claim under the First Amendment are: (1) that the plaintiff had engaged in conduct protected by the First Amendment; (2) that an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from engaging in that conduct; and (3) that the adverse action taken against the plaintiff was motivated, at least in part, by the protected conduct. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc); *see also McGee v. Schoolcraft Cmty. Coll.*, 167 F. App'x 429, 438 (6th Cir. 2006). The Court will allow Plaintiff's retaliation claim against Defendant Hogan in his individual capacity to go forward.

Plaintiff has not stated a claim of retaliation against Defendant Hogan in his official capacity. When a § 1983 claim is made against a municipality, a Plaintiff must show that his harm was caused by a constitutional violation and whether the municipality, here his employer, the Louisville Metro Government, is responsible for that violation. *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 120 (1992).

A municipality cannot be held responsible for a constitutional deprivation unless there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation. *Monell*, 436 U.S. at 691; *Deaton v. Montgomery Cnty., Ohio*, 989 F.2d 885, 889 (6th Cir. 1993). Simply stated, Plaintiff must "identify the policy, connect the policy to the city itself and show that the particular injury was incurred because of the execution of that policy." *Garner v. Memphis*

13

*Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993) (quoting *Coogan v. City of Wixom*, 820 F.2d 170, 176 (6th Cir. 1987), *overruled on other grounds*, *Frantz v. Vill. of Bradford*, 245 F.3d 869 (6th Cir. 2001)).  The policy or custom "must be 'the moving force of the constitutional violation' in order to establish the liability of a government body under § 1983."  *Searcy*, 38 F.3d at 286 (quoting *Polk Cnty. v. Dodson*, 454 U.S. 312, 326 (1981) (citation omitted)); *Bd. of Cnty. Comm'rs of Bryan Cnty., Okla. v. Brown*, 520 U.S. 397, 404 (1997) (indicating that plaintiff must demonstrate "deliberate conduct").  Plaintiff does not do so in relation to this retaliation claim.

 *Conditions-of-confinement claim*

  Nor has Plaintiff stated an Eighth Amendment claim in relation to the conditions of his cell during his brief incarceration in April 2013.  Plaintiff's allegations that during his two-day incarceration in April 2013 he had no bunk, the toilet was broken, the cell was scattered with feces, and he was given medication to which he had an allergic reaction do not state a constitutional violation.

  It appears that during his two-day incarceration in April 2013, Plaintiff was a pretrial detainee.  A convicted inmate's right against cruel and unusual punishment stems from the Eighth Amendment, while a pretrial detainee's rights stem from the Fourteenth Amendment.  *Thompson v. Cnty. of Medina, Oh.*, 29 F.3d 238, 242 (6th Cir. 1994).  The scope of a detainee's Fourteenth Amendment rights is equivalent to that of a convicted inmate under the Eighth Amendment, and thus, the Court may look to Eighth Amendment caselaw.  *See id.*; *Roberts v. City of Troy*, 773 F.2d 720, 723 (6th Cir. 1985).  To satisfy the objective component of an Eighth Amendment claim, a prisoner must show that he "is incarcerated under conditions posing a substantial risk of serious harm," *Farmer v. Brennan*, 511 U.S. 825, 834 (1994), or that he has been deprived of the "minimal civilized measure of life's necessities," *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981).  "[T]he

14

Constitution does not mandate comfortable prisons." *Id.* at 349. Rather, "routine discomfort 'is part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347).

"The circumstances, nature, and duration of a deprivation . . . must be considered in determining whether a constitutional violation has occurred." *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000). Here, exposure to a broken toilet and the presence of feces and the resulting odors as well as the lack of a bunk was of short duration – two days – and did not amount to an Eighth Amendment violation. *Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001) ("With respect to Plaintiff's conditions of confinement claims – that he was deprived of a lower bunk, was subjected to a flooded cell, and was deprived of a working toilet – Plaintiff alleged only temporary inconveniences and did not demonstrate that the conditions fell beneath the minimal civilized measure of life's necessities as measured by a contemporary standard of decency."); *Jones v. Toombs*, No. 95-1395, 1996 WL 67750, at *1 (6th Cir. Feb. 15, 1996) (holding that as a matter of law defendants did not violate inmate's Eighth Amendment rights by depriving him of a mattress for a two-week period.); *Mills v. C.C.A.*, No. 1:10-0015, 2010 WL 5155478, at *5 (M.D. Tenn. Dec. 14, 2010) ("Even if the Court takes as true the allegations that [unsanitary] water flowed from a nearby shower into the Plaintiff's cell three times a week, that this condition occurred for a period of several weeks, and that the water was not promptly cleaned up, these facts simply do not show that he was subjected to the type of extreme deprivation necessary to implicate the Eighth Amendment.").

Moreover, Plaintiff does not allege that he suffered any injury, even a *de minimis* one, as a result of any of these conditions, including his claim that he was prescribed "life-threatening" medication to which he had an allergic reaction. Consequently, Plaintiff has not alleged that he

suffered an injury that meets the Prison Litigation Reform Act's threshold.  *See Starnes v. Green Cnty. Sheriff's Dep't*, No. 2:08-cv-244, 2010 WL 2165368, at *3 (E.D. Tenn. May 26, 2010) (finding plaintiff's complaint that he "felt sick" for two days was, at most, a *de minimis* injury that was insufficient to support an Eighth Amendment claim); *Moore v. Simmons*, No. 5:06-CT3143 H, 2007 WL 4262702, at *3 (E.D.N.C. May 18, 2007) (finding no constitutional violation where plaintiff did not state that the complained-of conditions, including stagnant toilets and inmates throwing feces daily, "caused him serious or significant physical injury" despite the plaintiff's claim that the conditions caused "sore throat-high grade fever").  Even if the Court presumes that the conditions as alleged by Plaintiff here caused an increased risk of disease and physical ailments, such risk has not been alleged to have resulted in actual physical harm.  *Catanzaro v. Mich. Dep't of Corr.*, No. 08-11173, 2009 WL 2154921, at *4 (E.D. Mich. July 14, 2009) ("[W]hile the Plaintiffs make generalized claims about overcrowded and unsanitary prison conditions, and assert that these conditions are likely to cause the spread of communicable diseases and assaults, they do not themselves establish that, as a result of allegedly unconstitutional prison conditions, they have been injured.").  Consequently, Plaintiff has failed to state an Eighth Amendment conditions-of-confinement claim relating to his April 2013 confinement.

*Defendant Clark*

The complaint explains that Defendant Clark is responsible for overseeing Defendants Bingham and Baker and is in charge of Records/Intake Release, but contains no allegations against Defendant Clark except that he conspired to put Plaintiff on grievance restriction.

As already explained, the doctrine of *respondeat superior* does not apply in § 1983 actions to impute liability onto supervisors.  *Monell*, 436 U.S. at 691; *Taylor*, 69 F.3d at 80-81; *Bellamy*, 729 F.2d at 421.  "[L]iability of supervisory personnel must be based on more than merely the

16

right to control employees." *Hays v. Jefferson Cnty., Ky.*, 668 F.2d 869, 872 (6th Cir. 1982).

Thus, the mere fact that Defendant Clark oversaw other employees, without more, cannot state a §

1983 claim.

       With regard to the placement of Plaintiff on grievance restriction, as already explained,

such a restriction does not violate the constitution because no inmate grievance procedure is

required. *See Spencer*, 638 F. Supp. at 315.  Thus, the claims against Defendant Clark will be

dismissed.

       *Defendant Gravette*

       According to the complaint, Defendant Gravette was a friend of Defendant Padilla.

Plaintiff alleges that Defendant Gravette made several threats to punch and beat Plaintiff and "with

an attitude ready and willing to kick inmate Porter's ass if files a grievance on him."  The Court

will allow Plaintiff's retaliation claim to continue against Defendant Gravette in his individual

capacity but not in his official capacity because Plaintiff does not allege a municipal custom or

policy that was "the moving force of the constitutional violation in order to establish the liability

of a government body under § 1983." *Searcy*, 38 F.3d at 286 (internal quotation marks and

citation omitted).

       *Defendant Bingham*

       Plaintiff alleges that Defendant Bingham conspired and lost critical evidence in the sexual

assault investigation and the original grievance against Padilla.  He alleges this was a serious civil-

rights and due-process violation.  He also alleges that on January 7, 2013, Defendant Bingham

conspired with CHS to provide false information, causing a malicious arrest warrant to be issued

against Plaintiff in retaliation for consumer complaints Plaintiff filed.

       The Court will allow the retaliation and conspiracy claims to go forward against Defendant

17

Bingham in her individual capacity.

*Defendant Allen*

Plaintiff alleges that he was placed on grievance restriction in a "conspired retaliation effort" on June 15, 2012, and that proof is found in a letter from among others, Defendant Allen. However, he then states that the letter had the letterhead of Mayor Fischer and Director Bolton with Defendant Allen listed in the "cc" portion. Thus, his only allegation against this Defendant is that Defendant Allen received a copy of a letter. "To state a claim under § 1983, a plaintiff must set forth facts that, when construed favorably, establish: 1) the deprivation of a right secured by the Constitution or laws of the United States; 2) caused by a person *acting* under the color of state law." *Harris v. City of Circleville*, 583 F.3d 356, 364 (6th Cir. 2009) (emphasis added). Receiving a letter is not action, and Plaintiff has failed to state a § 1983 claim against Defendant Allen.

*Defendants Eggers and Joyner*

Plaintiff's allegations against Defendants Eggers and Joyner are simply that he gave a recorded statement to them on April 10, 2012. This allegation contains no action on the part of Defendants; therefore, they cannot be liable for violating Plaintiff's constitutional rights.

*Defendant Padilla*

The Court will allow Plaintiff's federal constitutional claims against Defendant Padilla to continue in his individual capacity, as well as Plaintiff's state-law claims against this Defendant.

**Claims against CHS Defendants**

*Defendant Henderson*

Plaintiff alleges that, as retaliation, Defendant Henderson refused to provide him with adequate mental health treatment when, during his incarceration at LMDC from April 12, 2013, to

18

April 13, 2013, "Maxwell Henderson walked right by Plaintiff without-out providing any mental health treatment."

Thus, Plaintiff alleges that this Defendant failed to provide treatment during his two-day incarceration, a very brief amount of time. Moreover, Plaintiff does not allege any harm from the refusal by this Defendant to provide mental health on this one occasion. Nor does he allege that he did not receive any other mental health care from another provider during his two-day stay in prison. Thus, the Court finds that Plaintiff has failed to state an Eighth Amendment claim against Defendant Henderson. *See Spencer*, 449 F.3d at 727.

The Court will allow the retaliation claim to go forward against Defendant Henderson only in his individual capacity because he has not alleged the existence of the required custom or policy to sustain a claim in his official capacity. *See Searcy*, 38 F.3d at 286.

*Defendant Grubbs*

Plaintiff's only allegation concerning Defendant Grubbs, a CHS nurse, was that Defendant Grubbs frequently made sexually inappropriate jokes and comments to Plaintiff.

Under the Eighth Amendment, punishment may not be "barbarous," nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. at 345-46. The allegations against Defendant Grubbs are only of verbal abuse. "Not every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment . . . ." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam). Verbal abuse and harassment do not constitute punishment that would support an Eighth Amendment claim. *Id.* at 955; *see Johnson v. Ward*, No. 99-1596, 2000 WL 659354, at *1 (6th Cir. May 11, 2000) ("Johnson's allegation that Ward made an offensive sexual remark to him does not rise to the level of a constitutional violation [as such is merely verbal abuse]."); *see also Searcy v. Gardner*, Civil No. 3:07-0361,

2008 WL 400424, at *4 (M.D. Tenn. Feb. 11, 2008) ("A claim under 42 U.S.C. § 1983 cannot be based on mere threats, abusive language, racial slurs, or verbal harassment by prison officials."). Simply put, "[a]cts of verbal sexual harassment, standing alone, are insufficient to state a claim under the Eighth Amendment." *Calvert v. Weatherford*, No. 3:13-cv-00274, 2013 WL 1937690, at *2 (M.D. Tenn. May 9, 2013). Thus, Plaintiff has failed to make any allegations of a constitutional dimension against this Defendant.

### Defendant Hendrickson

Plaintiff states that on September 20, 2012, Defendant Hendrickson, CHS administrator, answered one of his grievances. He also states that after an inmate died at LMDC Defendant Hendrickson told Plaintiff, "'[G]ood[.]  I am here to overly prescribe meds, not to save lives.'"

As already explained, merely answering a grievance is not a constitutional violation. *See Alder*, 73 F. App'x at 841. Nor does making a disparaging comment about another inmate rise to the level of a constitutional violation. Therefore, the claims against this Defendant will be dismissed for failure to state a claim.

### Defendant Muncy

Plaintiff does not allege that Defendant Muncy did or failed to do anything of a constitutional magnitude. His only allegations concerning her are that SCS and Defendant Grigsby received false and faulty information from CHS and Defendant Muncy, but he does not explain further. Plaintiff also states that he filed several complaints and grievances against Defendant Muncy. Plaintiff has failed to state a § 1983 claim against this Defendant. *See Harris*, 583 F.3d at 364 ("To state a claim under § 1983, a plaintiff must . . . establish: 1) the deprivation of a right secured by the Constitution or laws of the United States; 2) caused by a person acting under the color of state law.").

*Defendants French and Brown-Anderson*

Plaintiff claims that Defendants French and Brown-Anderson, both dentists, refused to provide him with adequate dental treatment in retaliation.  He further alleges that Defendant French told him that he would "'not pull one single tooth because all of the grievances Mr. Porter, come on you know how we work and operate her[e] at the Jail.'"

The Court will allow Plaintiff's retaliation claim against these Defendants in their individual capacities to go forward.  The Court will also allow the retaliation claim to go forward against CHS because Plaintiff has alleged that CHS implemented a policy, custom, or practice that caused a deprivation of his constitutional rights.  *See Starcher v. Corr. Med. Sys., Inc.*, 7 F. App'x 459, 465 (6th Cir. 2001).

### Claims against Seven Counties Services Defendants

*Defendants Van Meter and Bates*

Plaintiff states that in June 2011, Defendants SCS, Van Meter, and Bates "deliberately and intentionally conspired to lie and provide faulty, incorrect, and 'false' information about Plaintiff" to a state-court judge.  He states that in July 2013, Defendant Bates admitted that SCS provided incorrect information to the state court.

Plaintiff's conspiracy claim against these Defendants fails under the intracorporate conspiracy doctrine, in which "members of the same legal entity cannot conspire with one another as long as their alleged acts were within the scope of their employment."  *Jackson v. City of Columbus*, 194 F.3d 737, 753 (6th Cir. 1999), *overruled on other grounds by Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506 (2002).  The intracorporate conspiracy doctrine is applicable to governmental entities.  *See Hull v. Cuyahoga Valley Joint Vocational Sch. Dist. Bd. of Educ.*, 926 F.2d 505, 509-10 (6th Cir. 1991) (applying doctrine where conspiracy was alleged between school

21

superintendent, executive director of the district, and a school administrator).

   *Defendant Sharifo*

   Plaintiff alleges that on June 6, 2011, Defendants Sharifo and SCS conspired to retaliate and discriminate by refusing to see him, then denying him proper mental health treatment, counseling, and medication.  Thus, his allegation against Defendant Sharifo is that he refused to see him on one occasion.  He has not alleged that he did not receive mental health services for longer than one day because of Defendant's actions.  The Court finds that Plaintiff fails to state a claim against Defendant Sharifo.  The conspiracy claim fails because Defendant Sharifo is an employee of SCS.  *See id.*  The Court finds that this brief denial is insufficient to be adverse action to state a retaliation claim.  *See, e.g.*, *Sango v. Ault*, No. 1:14-CV-345, 2014 WL 1744726, at *8 (W.D. Mich. Apr. 30, 2014) (finding that a prisoner being prevented from seeing the afternoon nurse one time, not sufficient adverse action to support a retaliation claim).   Nor does Plaintiff even state on what basis this alleged discrimination occurred – race or disability.

   *Defendant Grigsby*

   Plaintiff alleges that on April 28, 2011, SCS and Defendant Grigsby maliciously received and reported false information from LMDC and that Plaintiff Grigsby intentionally used this information against Plaintiff as retaliation.  Plaintiff does not explain how the information was used as retaliation.

   Here, Plaintiff fails to explain what the protected conduct was, and the action of using "information" against him does not appear to be sufficiently adverse.  Therefore, Plaintiff has failed to state a claim for retaliation.  *See Thaddeus-X*, 175 F.3d at 394.

**Claims against remaining Defendants**

   The complaint makes no allegations against Defendants Walker, Zellers, Woods,

Kara Easley, Reiss, Zipple, Haskins, and David Easley.  Some factual basis for claims against a

Defendant must be set forth in the pleadings.  *Chapman v. City of Detroit*, 808 F.2d 459, 465 (6th

Cir. 1986).  Plaintiff must allege specific facts that explain how the defendant is personally

responsible for the alleged injuries.  *Smith v. Rowe*, 761 F.2d 360, 369 (7th Cir. 1985).  Plaintiff's

complaint fails to do so with regard to these Defendants.  As such, the claims against these

Defendants must be dismissed for a failure to state a claim.  *See Copeland v. Machulis*, 57 F.3d

476, 481 (6th Cir. 1995) (per curiam) (stating that personal involvement by the defendant is an

essential element in a § 1983 cause of action asserting a constitutional deprivation).

### III. <u>CONCLUSION AND ORDER</u>

For the foregoing reasons, the Court will allow the following claims to continue:

Plaintiff's ADA claim against the Louisville Metro Government regarding his not being

allowed to attend church services;

Plaintiff's claim for retaliation against Defendants Hogan, Gravette, Bingham and

Henderson in their individual capacities and state-law claims against these Defendants;

Plaintiff's claim for retaliation and state-law claims against French and Brown-Anderson in

their individual and official capacities;

Plaintiff's conspiracy and state-law claims to continue against Defendant Bingham in her

individual capacity and CHS; and

Plaintiff's federal constitutional and state-law claims against Defendant Padilla.

**IT IS ORDERED** that Plaintiff's claims under the PREA, the FTCA, and Title VII are

**DISMISSED** for failure to state a claim.

**IT IS ORDERED** that the state-law claims with respect to all Defendants who have been

terminated from this action are **DISMISSED without prejudice**.

**IT IS ORDERED** that all other claims are **DISMISSED**.

The Clerk of Court is **DIRECTED** to terminate as Defendants the following:  the City of Louisville, the Louisville Metro Department of Corrections, the Louisville Metro Police Department, Matthew Glass, Mark E. Bolton, Cathy Butler, Martin Baker, Capt. Christopher Chapman, Dwayne Clark, Jamie Allen, Arthur C. Eggers, Gregory Joyner, Mike Grubbs, Angeleta Hendrickson, Jessica Muncy, Seven Counties Services, Charlotte Van Meter, Aaron Bates, Manshadi Sharifo, Andrea Grigsby, Armon Walker, Lee Zellers, Kibibi Woods, Kara Easley, Thomas Reiss, Anthony M. Zipple, Beverly Haskins, and David Easley.

The Court will enter a separate Scheduling Order to govern the development of the continuing claims.

Date:

cc:     Plaintiff, *pro se*
        Defendants
        Jefferson County Attorney
4412.009

24